UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 3:15-cr-93-J-32MCR

ESTHELA CLARK

_____/

**ORDER**

**THIS CAUSE** is before the Court on the issue of Defendant's competency to proceed with this case. The Court has considered the parties' submissions to date as well as the testimony and arguments from the most recent competency hearing. For the reasons set forth below, the Court concludes that Defendant is competent to participate in all Court proceedings.

**I.      Background**

On June 24, 2015, a nine-count Indictment was returned in open Court charging Defendant with encouraging or inducing an alien to enter the United States unlawfully (Count One), bringing an alien to the United States unlawfully (Count Two), alien harboring (Count Three), labor trafficking (Count Four), peonage (Count Five), involuntary servitude (Count Six), forced labor (Count Seven), commercial sex trafficking (Count Eight), and unlawful conduct with respect to documents (Count Nine). (Doc. 18.) Defendant was detained pending trial. (*See* Doc. 16-2.)

At defense counsel's request, Stephen J. Bloomfield, Ed.D., a licensed

psychologist, issued a report on September 2, 2015, after conducting a psychological evaluation, assessment, and examination of Defendant on September 1, 2015. (Doc. 35.) Dr. Bloomfield opined that Defendant was incompetent to proceed due to a Psychotic Disorder NOS and needed hospitalization as soon as possible because "the object of her delusional belief system [was] the Baker County jail and its staff." (*Id.* at 1.)

On September 24, 2015, the Court held a competency hearing and, on September 29, 2015, on Defendant's motion and the parties' stipulation regarding Dr. Bloomfield's report, the Court committed Defendant for treatment and a psychiatric or psychological examination to the custody of the Attorney General for placement at the Federal Medical Center Carswell ("FMC Carswell") in Ft. Worth, Texas, for a reasonable period not to exceed 120 days. (Doc. 36.)

Defendant arrived at FMC Carswell on October 20, 2015. (Doc. 67-1.) Following her competency restoration, on March 1, 2016, Hayley Blackwood, Ph.D., a staff psychologist, Christine Anthony, Ph.D., a forensic psychologist, and Daniel D. Kim, a chief psychologist, submitted a report dated February 28, 2016, opining that Defendant was competent to proceed with the current case. (*Id.*) Defendant was administered the following psychological testing: Personality Assessment Inventory – Spanish Version (PAI) and Structured Interview of Reported Symptoms – 2nd Edition, Spanish Version (SIRS-2). (*Id.* at 4.) The diagnostic impression was malingering. (*Id.* at 15.) The doctors explained:

> Despite [Ms. Clark's] self-report of experiencing multiple types of hallucinations, she has displayed no observable signs of psychotic disturbance. Her report of psychotic symptoms has been inconsistent across clinical interviews during the current evaluation period, as well as discrepant from her report during her previous forensic evaluation in September 2015. As discussed throughout this report, behavioral observations and test results from the current evaluation revealed inconsistencies between Ms. Clark's reported symptoms and observations of her behavior, particularly with regard to her reported paranoia and persistent hallucinations. On direct questioning in the context of standardized psychological testing, Ms. Clark consistently endorsed a significant number of obvious signs of severe mental illness, but such problems were notably absent in her day to day functioning and inconsistently endorsed in the context of clinical interviews. As described in this report, Ms. Clark's report of mental health problems, including ongoing perceptual disturbances, is highly atypical. That is, her self-report during clinical interviews indicated her willingness to endorse a pattern of severe and unusual mental health symptoms that are never or rarely seen among individuals with a genuine mental illness. Lastly, although briefly treated with psychotropic medication in the past, Ms. Clark has not taken any psychotropic medication since October 2015. In the presence of a severe mental illness, such as a formal thought disorder or major mood disorder, her mental status would significantly worsen without medication. During the course of the current evaluation, Ms. Clark's mental status remained stable without any treatment with psychotropic medications. Thus, when considered together, the available data in this case strongly support a diagnosis of Malingering. . . . While genuine mental illness and malingering are not mutually exclusive, available data in Ms. Clark's case does not support an additional diagnosis of any mental health disorder.

(*Id.* at 15-16.)

The doctors opined that Defendant's prognosis as to her competency to stand trial was good. (*Id.* at 16.) She had "a good factual and rational understanding of the charges and proceedings against her." (*Id.* at 14; *see also*

*id.* at 16.) The doctors also opined that Defendant's ability to communicate reasonably with her attorney while at the facility and to communicate effectively with the evaluators over the course of multiple interviews "should generalize to future interactions with her attorney" as well. (*Id.* at 15, 16.) They concluded that Defendant did "not suffer from a mental disease or defect that could significantly interfere with her factual and rational understanding of the legal proceedings [against] her or her ability to communicate with her attorney with a reasonable degree of rational understanding," and, as such, was competent to stand trial. (*Id.* at 16.)

On June 16, 2016, Dr. Bloomfield conducted another psychological evaluation, assessment, and examination of Defendant at the Baker County Jail. (Doc. 67 at 2.) In a report issued on June 21, 2016, he opined that Defendant was competent to proceed. (*Id.*) He explained: "[Defendant] has a lucid rational and clear understanding of the charges against her, the possible consequence; how the adversarial system functions. She can assist in her own defense. She can contribute to her own defense." (*Id.*) Dr. Bloomfield added:

> Since she is presenting with psychotic like symptoms[,] I explored the possibility of diagnosis and of [sic] malingering. It is my opinion the "voices" are anxiety related and not a full hallucinatory experience. I do not believe she is malingering. She has a tendency to over present symptoms but I believe this is based upon a Histrionic personality style. I do not believe she is malingering.

(*Id.* at 3.)

4

On June 22, 2016, the Court held another competency hearing and received the parties' stipulation regarding Dr. Blackwood's February 28, 2016 report and Dr. Bloomfield's June 21, 2016 report. (Docs. 63, 65.) Based on these reports and the absence of any contrary evidence, on June 29, 2016, the Court entered an Order finding Defendant competent to participate in all pretrial proceedings and to stand trial. (Doc. 68.)

On March 27, 2017, Defendant entered a plea of guilty to Count Seven of the Indictment, charging her with forced labor in violation of 18 U.S.C. § 1589(a). (Docs. 89, 90, 91, 92.) The Plea Agreement provided that at the time of sentencing, the remaining counts against Defendant would be dismissed pursuant to Fed.R.Crim.P. 11(c)(1)(A). (Doc. 91 at 3.) On March 30, 2017, Judge Corrigan adopted the undersigned's Report and Recommendation Concerning Plea of Guilty as to Count Seven and adjudged Defendant guilty of the offense. (Doc. 95.) Sentencing was scheduled for June 28, 2017.[1] (*Id.*)

On May 18, 2017, defense counsel filed a Second Motion for Hearing to Determine Competency, providing, in relevant part: "Regrettably, since the entry of the plea [of guilty], it appears Ms. Clark's mental health condition has significantly deteriorated. As a result of observations of the undersigned counsel and others, counsel submits a good faith basis exists to move for a hearing to

---

[1] The sentencing hearing has been continued several times and is currently set for May 30, 2018. (Docs. 103, 111, 114, 123.)

determine her competency for sentencing." (Doc. 96.) On June 1, 2017, the Court held a hearing on the motion, at which time defense counsel orally moved for a continuance of the motion hearing and for a competency evaluation by a local expert. (Docs. 98, 99, 100.) The Court continued the motion hearing and appointed Jason A. Demery, Ph.D., ABPP, for the purpose of examining Defendant and issuing a written report as to her competency. (Docs. 101, 104.)

Dr. Demery examined Defendant at the Baker County Jail on August 11, 2017, and issued a report on August 28, 2017. (Doc. 108 at 2.) He opined that Defendant had an inadequate understanding of the nature and consequences of the proceedings against her and was incapable of properly assisting in her defense at that time. (*Id.*) Dr. Demery assessed Unspecified Schizophrenia Spectrum and Other Psychotic Disorder. (*Id.* at 5.) He noted that he was unable to assess Defendant's appreciation of the charges against her, appreciation of the range and nature of possible penalties, appreciation of the range of plea options, and understanding of the adversarial nature of the legal process. (*Id.* at 4.) He added:

> Based on her markedly impaired responses, she does not appear to have an adequate ability to disclose to her attorney facts pertinent to the proceedings at issue. . . . Given Ms. Clark's repeated responses of "I don't know," she appears to have an inadequate capacity to testify relevantly and coherently. . . . Ms. Clark was minimally responsive throughout the evaluation. . . . While she does not appear to be likely to be disruptive in the courtroom, her inattentiveness and responses to voices may compromise her ability to be attentive and

stay engaged throughout any hearing. Overall, Mr. [sic] Clark appears to have an

6

inadequate ability to manifest appropriate courtroom behavior.

(*Id.* at 5.)

On August 31, 2017, the Court held another competency hearing, at which time the parties filed a joint stipulation as to Dr. Demery's report. (Docs. 107, 108.) On September 1, 2017, the Court entered an Order committing Defendant to the custody of the Attorney General for placement at FMC Carswell, for a reasonable period not exceeding four months, for the purpose of treatment and a psychiatric or psychological examination. (Doc. 109.)

Defendant initially arrived at FMC Oklahoma on September 19, 2017, where the psychologist noted that "malingering was suspected," but could not be confirmed due to Defendant's lack of verbal communication with the staff. (Doc. 121 at 11.) On September 26, 2017, Defendant arrived at FMC Carswell. (*Id.*) Following her competency restoration, on February 14, 2018, Amor Correa, Ph.D., a forensic psychologist, and Dr. Kim submitted a report, dated February 1, 2018, opining that Defendant was competent to proceed with the current case. (Doc. 121 at 2, 3, 19-20.) Specifically, they found that Defendant was not suffering from a mental disease or defect that would render her unable to understand the nature and consequences of the proceedings against her, to properly assist in her defense if she so chooses, or to understand the consequences and significance of pleading guilty to the charges against her. (*Id.* at 19-20; *id.* at 2, 3.)

The diagnostic impression was malingering. (*Id.* at 17.) Dr. Correa explained:

> Diagnoses of Unspecified Psychotic Disorder and Unspecified Schizophrenia Spectrum and Other Psychotic Disorder have been ruled out. . . . As stated previously, there was no consistent or credible evidence of hallucinations or delusions, despite the fact that Ms. Clark remained unmedicated throughout this evaluation period. . . . Although records indicate Ms. Clark has sometimes been described as "catatonic" by medical staff, catatonia is exceedingly rare and Ms. Clark was often described as exhibiting normal motor movements and purposeful behavior before and after these same medical appointments. Ms. Clark displayed no symptoms consistent with genuine psychosis during the current evaluation period. . . . A first psychotic episode at Ms. Clark's age is extremely unlikely except in cases of organic brain insult such as head injury or stroke. An MRI scan conducted during the current evaluation period ruled out organic causes.
>
> As detailed in the Forensic evaluation from FMC Carswell, dated February 28, 2016, the behaviors displayed by Ms. Clark when she was diagnosed with symptoms of psychosis were highly inconsistent with those displayed by genuine patients. Specifically, results of that evaluation revealed marked inconsistencies between Ms. Clark's reported symptoms and observations of her behavior, particularly with regard to her reported paranoia and persistent hallucinations. During formal psychological testing conducted in 2016, Ms. Clark consistently endorsed a significant number of obvious severe mental health symptoms, but such problems were notably absent in her day to day functioning. Furthermore, her report of symptoms was inconsistent across interviews. . . .
>
> There is strong evidence from behavioral observations and previous test results that Ms. Clark has fabricated or exaggerated psychological deficits. Additionally, it appears the onset of any reported symptoms occurred after she learned of the criminal charges against her, with a new period of alleged onset as she approached her sentencing date. Throughout both four-month periods of evaluation at FMC Carswell, Ms. Clark has demonstrated the ability to assimilate feedback from mental health staff and alter

> her symptom presentation accordingly. There is no psychological or organic cause for her most recent presentation of mutism and intermittent confused or fearful facial expressions. Rather, it appears this is Ms. Clark's most recent strategy for appearing psychologically impaired, as previous diagnoses of psychotic disorders have already been ruled out by multiple mental health professionals. At this time, Ms. Clark continues to meet criteria for no additional mental health diagnoses.
>
> With regard to her competency to stand trial, Ms. Clark's prognosis is good. She was persistently uncooperative with this evaluation, but did not present with any major mental health symptoms that would prevent her from being a competent defendant if she so chooses. As described above, she did not display significant deficits in her daily functioning, despite not receiving treatment with psychotropic medication. She has previously demonstrated the ability to retain legal and Court concepts and apply these concepts in a rational manner. In addition, she has displayed no psychological deficit that would have caused her to lose these abilities or that would prevent her from assisting her attorney in her defense. Ms. Clark may not be interpersonally invested in cooperating with an attorney to plan a legal strategy, but her lack of interest should not be misinterpreted as a lack of ability. This opinion is based on information obtained regarding Ms. Clark's psychological functioning over an extended period of time.

(*Id.* at 18-19.)

On March 15, 2018, the Court held a competency hearing, at which the Government presented the telephonic testimony of Dr. Correa. (Docs. 117, 118.) The forensic evaluation by Dr. Correa and Dr. Kim, dated February 1, 2018, was also received into evidence as Government's Exhibit One.[2] (Doc. 118.) The most relevant portions of Dr. Correa's testimony are summarized below.

Dr. Correa testified that Defendant's presentation during her last

---

[2] Presently, this exhibit is under seal. (Doc. 121.)

competency restoration at FMC Carswell was "vastly different" from her presentation the first time she was there. (Tr. 9.)[3] Defendant's "presentation this time around consisted of primarily being mute" and every once in a while answering questions with "I don't know" or some unintelligible whisper. (Tr. 10.) However, no organic or medical cause for Defendant's mutism was discovered. (Tr. 12, 16.) Further, Defendant's functioning was generally intact.[4] (Tr. 11, 15.)

Moreover, Defendant's "presentation was largely inconsistent . . . throughout the evaluation period." (Tr. 16.) For example, it fluctuated depending on who she was communicating with and depending on the topic of conversation, it also fluctuated depending on the duration of the contact (the longer the meeting lasted, the more her behavior subsided), and it was inconsistent with her presentation before and after her meetings with medical staff. (Tr. 16-18, 49-50.) Also, Defendant seemed "able to incorporate feedback about her symptoms" from earlier reports, suggesting "an attempt to become more sophisticated and convincing in her presentation as time went on." (Tr. 19.) In addition, although Dr. Correa could not administer formal psychological testing because, for the most part, Defendant declined to speak to her, Defendant's testing from previous evaluations consistently indicated a malingering presentation. (Tr. 21.) Given

---

[3] The transcript of the digitally recorded competency hearing was filed as Doc. 124.

[4] Of note, Defendant's functioning during her first time at FMC Carswell was inconsistent with her complaints of symptoms at the time. (Tr. 14.)

that Defendant's health status had not changed as she did not suffer any organic brain insult that could have caused her alleged symptoms and there was neither medical nor psychological reason for her presentation, Dr. Correa concluded that Defendant was malingering.[5] (Tr. 11, 21-22.)

Dr. Correa further concluded that Defendant was competent to proceed with this case. (Tr. 22.) She explained that in her three previous evaluations, Defendant was able to articulate good factual knowledge and rational understanding of the proceedings against her, she was able to reach out to her attorney prior to proceeding with certain parts of those evaluations, and she demonstrated sufficient capacity to assist in her defense. (Tr. 48.) Since those evaluations, there has been no medical or psychological cause to prevent Defendant from using these abilities. (*Id.*) In Dr. Correa's opinion, motivation was "the deciding factor," which "goes hand-in-hand with malingering." (*Id.*) She explained: "An individual can have the capacity to do something, but simply not be motivated to do it, or be motivated to not do it, for whatever reason they may have." (Tr. 49.)

II. **Discussion**

The Court is required to hold a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental

---

[5] Dr. Correa testified that in less than five percent of her evaluations, she opined that malingering was involved. (Tr. 34.) She stated: "It's a diagnosis that I try to use very, very sparingly, because of the implications[.]" (Tr. 47.)

11

disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a).

> If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General.

18 U.S.C. § 4241(d); *see also United States v. Cruz*, 805 F.2d 1464, 1479 (11th Cir. 1986) ("The legal test for competency is whether the defendant had 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and whether he had 'a rational as well as factual understanding of the proceedings against him.'") (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

Here, the preponderance of the evidence indicates that Defendant is competent to proceed with this case. First, the Court finds, consistent with Dr. Correa's February 1, 2018 report and testimony at the March 15, 2018 hearing, the February 28, 2016 report from FMC Carswell, and Dr. Bloomfield's June 21, 2016 report, that Defendant is not suffering from a mental disease or defect rendering her unable to understand the nature and consequences of the proceedings against her. (*See* Docs. 67, 67-1, 121.) Dr. Correa did not find "any major mental health symptoms that would prevent [Defendant] from being a

competent defendant if she so chooses." (Doc. 121 at 19.) In her report, she explained:

> [Ms. Clark] did not display significant deficits in her daily functioning, despite not receiving treatment with psychotropic medication. She has previously demonstrated the ability to retain legal and Court concepts and apply these concepts in a rational manner. In addition, she has displayed no psychological deficit that would have caused her to lose these abilities or that would prevent her from assisting her attorney in her defense. Ms. Clark may not be interpersonally invested in cooperating with an attorney to plan a legal strategy, but her lack of interest should not be misinterpreted as a lack of ability. This opinion is based on information obtained regarding Ms. Clark's psychological functioning over an extended period of time.

(*Id.*)

Then, at the competency hearing, Dr. Correa confirmed that Defendant's functioning was generally intact and although Defendant presented primarily as mute during her most recent competency restoration, there was no organic or medical cause for her presentation. (Tr. 10, 11-12, 15-16.) These factors, along with Defendant's largely inconsistent presentation throughout the evaluation period, ability to incorporate feedback about her symptoms, the test results from the previous evaluations, and the lack of any organic brain insult that could have caused her alleged symptoms (Tr. 11, 16-19, 21-22, 49-50), led Dr. Correa to conclude that Defendant was malingering, which is consistent with the February 28, 2016 report from FMC Carswell and the September 19, 2017 notation from FMC Oklahoma (Doc. 67-1 at 15; Doc. 121 at 11). In light of this evidence, the Court finds that Defendant was indeed malingering during her evaluations.

Based on the foregoing, the Court also finds that Defendant has a rational as well as factual understanding of the proceedings against her.

Secondly, Defendant has sufficient present ability to consult with her lawyer with a reasonable degree of rational understanding. As reflected throughout the record, Defendant has been able to reach out to her attorney prior to proceeding with certain portions of her evaluations and has been able to reasonably communicate with her attorney and the evaluators during her first commitment at FMC Carswell. (Doc. 67-1; Tr. 48.) Although Defendant's presentation during her second commitment at FMC Carswell was vastly different in that she presented mostly as mute, as Dr. Correa noted, there was no medical or psychological cause for her symptoms, which could prevent Defendant from assisting with her defense. (*See* Doc. 121; Tr. 48.) Consistent with Dr. Correa's opinions and the conclusions in the February 28, 2016 report from FMC Carswell and Dr. Bloomfield's June 21, 2016 report, the Court finds that Defendant has the ability to communicate with her attorney with a reasonable degree of rational understanding. (Doc. 67-1 at 16; Doc. 67 at 2.) Accordingly, after due consideration, it is hereby

**ORDERED:**

Defendant, Esthela Clark, is mentally competent to proceed and there is no reason to delay further proceedings in this case.

**DONE AND ORDERED** at Jacksonville, Florida, on March 30, 2018.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record